STEPHEN H. GASTON, Defendant in Error, *v.* HENRY C. WHITE *et al.*, Plaintiffs in Error.

1. *Vendor's lien, where legal title is in vendor, a proceeding to foreclose vendee's equity — Equity may be sold under order of sale analogous to fi. fa.—* Where the legal title to real estate is in the vendor, proceedings to enforce his lien for the purchase money are not strictly such, but rather proceedings to foreclose the vendee's equity. If there is to be a sale, the proper way is to order the sale of the property, as in case of mortgages; but if a court should order defendant's equity to be sold, it would not be a void proceeding. And though the order of sale be analogous to a *fi. fa.* instead of to an order upon a mortgage, it would be valid and pass the equity.

2. *Judgment — Vendor's lien — Administrator — Revivor — Construction of statute.—*Where the vendor of real estate obtains a judgment to enforce his lien for the purchase money, and sues out execution, but dies prior to sale thereunder, a special execution, under the present statute (Wagn. Stat. 791, § 14), may be issued in the name of his administrators, without a revival of the judgment.

*Error to Sixth District Court.*

*Redd*, and *McCabe & Pratt*, for plaintiffs in error.

I. The court erred in holding that the judgment and decree of sale to enforce the vendor's lien, and the execution sale and sheriff's deed, were void and did not divest plaintiff of his equitable interest in the land.

II. The suing out of an execution by the administrators of the deceased plaintiff, without a revivor of the judgment, is authorized by section 17, p. 904, R. C. 1855.

*Dryden, Lindley & Dryden*, and *Rush, Lipscomb & Anderson*, for defendant in error.

I. The sale by the sheriff under execution was no bar to Gaston's equity to have specific execution of the contract of sale.

II. After the death of the judgment creditor no execution could lawfully issue until the judgment was revived by *scire facias.* (2 Tidd's Pr. 1117–20; Regina v. Ford *et al.*, 2 Raym. 768; 2 Sandf. 6 *a*, note 1; 2 Raym. 1072; Washington Ins. Co. v. Slee, 2 Paige Ch. 365; 1 Williams on Ex'rs, 766; Pennoir v. Brace, 1 Salk. 319.)

BLISS, Judge, delivered the opinion of the court.

In 1858 Clement White, deceased, gave to the plaintiff a bond for a deed of the land in controversy. Soon afterward the plaintiff left the State, leaving the land in charge of said White, who rented the same and collected the rents. Gaston had executed to White his note at twelve months for the purchase money, and left with him some small claims to collect and apply upon it. In 1860 said White instituted proceedings in the Marion Circuit Court to collect the note and enforce his lien upon the property, made Gaston a party by publication, and, after crediting him with a balance of accounts between rents collected and sundry expenses, obtained judgment for $3,652.60, with an order for a special execution against the property, directing the sheriff to sell the interest of said Gaston in the same. In 1862 Clement White died intestate, and letters were granted to two of the defendants.

In January, 1863, these administrators, without revivor, sued out a special execution reciting the judgment, the death of White, and the letters of administration, which execution commanded the sheriff to sell the interest of Gaston in the property; and upon the execution the administrators caused a credit of over $900 to be entered, for rents collected by deceased. The property was bid in by defendant, Henry C. White, for the benefit of the heirs of deceased, and for the sum of $3,000, and the sheriff made him a deed. In a division of the estate this property was allotted to Henry C. and John White, and valuable improvements have been made upon it.

The present suit was instituted in 1863, against the heirs of Clement White, to enforce a specific performance of a title bond given him in 1858. We should have no hesitation in saying that in consequence of his laches in fulfilling his part of the contract, the plaintiff had no equity, but from the fact that the defendants, so far from taking advantage of such negligence and rescinding or even disregarding the contract, down at least to the time of the sheriff's sale, constantly affirmed it. Since then the possession has been in hostility to the claim of the plaintiff.

The defendants in possession chiefly rely upon their purchase of the plaintiff's interest at sheriff's sale. He, on the other hand, claims that he lost nothing by that sale, for two reasons: first, that the judgment was irregular, being for the sale of his interest instead of the property itself; and, second, that the execution possessed the same infirmity, and, in addition, was issued in the name of the administrators without being formally revived.

That irregularities and errors in the rendition of judgments do not affect the validity of sales under executions issued upon such judgments, is not disputed, although this doctrine does not go to the extent of validating sales under void judgments, as where the court had no jurisdiction. And, also, executions irregularly issued are generally held to be good, except in a direct proceeding to quash. (Landis v. Perkins, 12 Mo. 238; Carson v. Walker, 16 Mo. 68.)

Firstly, we are to inquire whether this was a void judgment—

such a one as would not conclude the parties, although unreversed. Proceedings to enforce vendors' liens are usually had when the legal title is in the vendee; and there seems to be little necessity for them when the title is in the vendor. In the latter case they are not strictly proceedings to enforce liens — though, as in this case, they may be so designated — but rather to foreclose the vendee's equity. If there is to be a sale, the proper way is to order the sale of the property, as in case of mortgages; but if the court should order the defendant's equity to be sold, I can not see upon what principle it should be called a void proceeding. There is no statutory provision expressly applying to this class of cases. The defendant had only an equity. The whole matter was before the court and within its jurisdiction; and the order of sale, as actually made, though in analogy to a common *fi. fa.* instead of to an order upon a mortgage, must be held to be a valid one and to pass such equity.

We have, then, only to consider whether the special execution was properly issued in the name of the administrators, without a revival of the judgment. There is no doubt that a judgment of revivor is necessary unless dispensed with by the statute, and we think a fair construction of section 17, p. 904, Gen. Stat. 1865, then in force — and the same section is embraced in the present statute (Wagn. Stat. 791, § 14) — would authorize the issuing of this execution. The obscurity of the section arises from the attempt, in the same sentence, to provide for cases where one or more of several plaintiffs shall die, leaving a survivor, and where the sole or all the plaintiffs die. The first half of the section is clear enough, and provides that the judgment shall survive to the executor or administrator, or the heir or devisee, as the case may be, though one or more — which may be all — the plaintiffs die, but in the provision for execution without revivor there is more obscurity. By separating, rearranging, and filling the ellipses in this part of the section, it will be found to provide: first, for executions in the name of a surviving plaintiff; second, for executions in the name of the legal representatives of the deceased plaintiff or plaintiffs when all have died. And the section also provides that such executions shall be for the benefit, first, of the

surviving plaintiff and the legal representatives of his deceased co-plaintiff, and for the benefit of the legal representatives of the plaintiff or plaintiffs when all are deceased. Color is given to the construction claimed by the plaintiff, to-wit: that the section applies only to cases where one of several plaintiffs dies, by the phraseology of the last provision. But this provision is thrown in to enable the legal representatives of such deceased plaintiff to have the judgment revived in their favor, if they should deem it desirable, in order that they may be joined in the execution. No provision was necessary to meet a case where the plaintiff or all the plaintiffs had died, for it had already been made in section 4 of the same act.

Upon the construction we have given this statute, it will be seen that a judgment of revivor was not necessary in order that an execution might be issued; and inasmuch as the money sought to be secured by the sale belonged to the administrators of Clement White, they had a right to sue out the execution in their own name.

Upon this view of the case the judgments of the courts below must be reversed; and, as all the facts are before us, it is unnecessary to send the case back for any further proceedings. Independent of the legal questions raised upon the record, the plaintiff makes a poor show for the interposition of a court of equity, and his petition is dismissed. The other judges concur.