————o————

EDWARD A. LEWIS, Plaintiff in Error, *vs.* JOHN CHAPMAN, Defendant in Error.

1. *County school lands—Suit on bond given for purchase money—Sale of title of obligor—County lien, extinguishment of—Subrogation, etc.—Purchase under deed of trust.—*A. bought certain county school lands giving bond for the purchase money. In suit by the county on the bond, the petition, among other things, asked a special judgment, ordering sale of the land, and to foreclose defendant's equity of redemption; and the judgment and execution conformed thereto. But the sheriff's deed conveyed merely "the right, title and interest of A." Prior to the judgment, A. had encumbered the property with a duly recorded deed of trust under which it was afterwards sold to a third party. *Held,* 1st. that the judgment and execution in the suit against A. authorized a sale of the title held by the county as well as that of A.; but that without the sale and sheriff's deed, said judgment and execution conveyed no title, and that under the sheriff's deed, C. got nothing but the title of A. which was subject to the deed of trust and the vendor's lien, and was lost by the sale under the deed of trust. But *held* further, that as the manifest intent of the judgment against A. was to sell the entire estate, and as but for the mistake of the sheriff in executing his deed, the whole title would have passed, and as the money paid by B. at the sheriff's sale in point of fact went to extinguish the vendor's lien of the county, C. should be subrogated to the rights of the county in its lien to the extent of the money so paid.

*Error to St. Charles Circuit Court.*

*E. A. Lewis, in propria persona.*

I. The deed of trust under which plaintiff claims, was executed and recorded several months prior to the judgment under which the defendant purchased. Unless, therefore, the execution sale carried with it the original title held by the State, preserved through the county's sale to Judge, in the shape of a vendor's lien, and so transmitted to defendant

through the judgment, execution and sheriff's deed, the plaintiff in error has manifestly the better right, and is entitled, as the true legal representative of Judge, to all the benefit of the patent. It then becomes essential for defendant to show not only that the judgment was in its form and terms an enforcement of the vendor's lien, but that the execution, sale, &c., consummated its operation in that capacity. Such a proceeding, if calculated to carry the entire title to a purchaser under execution, must devote to sale and transfer the legal and equitable titles of both parties, vendor and vendee. If the vendor has retained the legal title, that must be sold along with the equitable title of the vendee. If he has made a conveyance, his equitable title or lien for the purchase money must go along with the vendee's legal title, in order to make the sale complete. In either case, the proceedings accomplish a transfer, not merely of the interest of one party or the other, but of "the property" itself. (Gaston vs. White, 46 Mo., 486.)

II. While the judgment in this case may have been sufficiently comprehensive, yet it could accomplish nothing without execution, sheriff's sale and deed to the same effect. The sheriff can exercise no power not contained in the writ. (Maupin vs. Emmons, 47 Mo., 309.) He cannot go to the judgment record to find any additional authority; nor can the purchaser under execution claim any more than the sheriff sells and conveys. (Strain vs. Murphy, 49 Mo., 337.) The defendant, then, never acquired from any source, more than "all the right, title, claim, interest and estate of James Judge," as expressed in the sheriff's deed.

III. The "right, title and interest of James Judge" was precisely the same thing that was conveyed by means of the trust deed to the plaintiff in error, and also by the sheriff's deed to the defendant in error, under a judgment of subsequent date. How can it be that the prior conveyance will not hold against the other? The lien, if any, before the judgment, was upon the land, and not upon Judge's equity. That equity he conveyed in the deed of trust. It was com-

petent for the vendor to extinguish it by a sale of the entire title, upon a foreclosure of the equity. But no such sale was ever made. (Broadwell vs. Yantis, 10 Mo., 401; Hall vs. Jones, 21 Md., 447; Richardson vs. Stillinger, 12 G. & J., 477.)

IV. There are no equities to be adjusted between the parties, as a condition of the plaintiff's right to recover. The defendant did not purchase at the sheriff's sale upon any false light held out by the plaintiff. The deed of trust was then upon record, but the defendant defied it. It is a well established rule that any payment on a mortgage debt or lien, out of the funds of the debtor, so far extinguishes the mortgage or lien in favor of the next incumbrancer. This rule entitles the plaintiff, and not the defendant, to all benefit of the payment made on the judgment out of Judge's personal assets. (Kinley vs. Hill, 4 Watts & Serg., 426; Perkins vs. Dibble, 10 Ohio, 433.)

*Lackland & Broadhead*, for Defendant in Error.

I. Chapman's is the prior title, being under the foreclosure of the lien for the original purchase money due from Judge as far back as 1854, of which Lewis was bound to take notice. (Adams vs. Cowherd, 30 Mo., 459; Broadwell vs. Yantis, 10 Mo., 401-2.) Lewis' title is under a deed of trust executed by Judge in May, 1866, subject to all claims of the school for the unpaid purchase money.

II. The school, in the suit in the Circuit Court, not only foreclosed the equity of redemption of Judge, but sold the whole title. The sheriff's deed to Chapman by virtue of the judgment, special execution, and by force of the law relating to school lands, conveyed the whole title discharged of every claim subsequent or prior. The prayer of the petition is, that the "court render a special judgment, ordering the sale of the land to pay said purchase money, and to foreclose whatever equity of redemption said James Judge may have in and to said land, and to render whatever other relief may be just and equitable." The judgment of the court was in

conformity with the prayer of the petition. Judge's equity of redemption was foreclosed and the land ordered to be sold to "satisfy said debt and damages, interest and costs."

The statute evidently contemplated and intended that the full title to the school lands in 16th sections should pass by such foreclosure and sale. (R. C. 1855, p. 1412, § 35; Gaston vs. White, 46 Mo., 486; Lumley vs. Robinson, 26 Mo., 364; Ficklin vs. Stephenson, 33 Mo., 341; Adams vs. Cowherd, *supra*; Broadwell vs. Yantis, *supra*; Wilson vs. School Town. No. 6, 23 Mo., 416; Duke vs. Brandt, 51 Mo., 222.)

VORIES, Judge, delivered the opinion of the court.

This action was in the nature of a bill in chancery, the object of which was to divest the title to certain lands in the petition named out of the defendant, and to vest the same in the plaintiff. The substantial charges in the petition are: that the sheriff of St. Charles county, under the authority of the County Court of said county, on the 11th day of October, 1854, sold to one James Judge the south-west quarter of the south-west quarter of section 16, in township 48, of range 5 east; containing 39 54-100 acres, being part of the lands donated by act of Congress to this State for purposes of education; that Judge purchased the land at the price of $316 32-100, for which he executed his bond with defendant as his security; that said Judge or his assigns thereby became entitled, by the payment of the purchase money, to receive a patent from the State vesting the title to said land in said Judge or his assigns in fee simple; that on the 12th day of May, 1866, the said Judge executed and delivered a deed of trust by which he conveyed to one A. Griffith, as trustee, all of his title and interest in said land in trust for the payment of certain indebtedness from said Judge to the plaintiff, with power of sale in the trustee if default was made in the payment of said debt as therein stated; that default was afterwards made, and said Griffith, pursuant to the provisions of said deed, on the 9th day of March, 1869, sold said land to

plaintiff at auction for the price and sum of $5, and then conveyed by deed of that date all of the right and interest of said Judge in said land which could be conveyed by virtue of said deed of trust. Whereby it is charged that plaintiff became entitled to receive a patent for said land from the State whenever the bond executed by said Judge for said land should appear to have been paid. The petition further states that long prior to the sale by said Griffith to plaintiff, on the 31st day of May, 1867, the said bond of said Judge, for the purchase money of said land, together with all interest thereon, was fully paid by means of a sale under executions in favor of St. Charles county of the personal property of said Judge; by means of which plaintiff became entitled to a patent from the State for said land; that the defendant, knowing of the rights of the plaintiff, and fraudulently intending to wrong plaintiff, by false representations and by pretending that he was the legal assignee of the said Judge, and entitled to his interest in said land, procured a patent to be issued to him from the State of Missouri, dated 25th day of May, 1870, by which the legal title to said land was vested in defendant, etc.

Plaintiff therefore prays a decree declaring defendant a trustee holding the real estate for the benefit of the plaintiff, and requiring that the legal estate be vested in plaintiff, etc.

The defendant in his answer admits the purchase of the land by Judge, as the same is charged in the petition, but denies the other allegations of the petition, except that he holds the legal title to the land in controversy. The answer then states as a defense to plaintiff's action that the said James Judge and defendant, having made default in the payment of the bond which was the consideration for said land, the County of St. Charles commenced a suit thereon in the Circuit Court of said county against said Judge and defendant, and on the 15th day of December, 1866, obtained judgment against said Judge and defendant for said purchase money and interest and costs, which said judgment was also a special judgment against said land, ordering that a sale thereof

be. made under a special execution for the unpaid purchase money, and also a judgment foreclosing said Judge's equity of redemption therein; that on the 3d day of May, 1867, a special execution was issued on said judgment under which the Sheriff levied upon, and, in due course of law, sold said real estate and all interest therein, including the interest of St. Charles County, held for the use of schools, as aforesaid, as well as the equity of redemption of said Judge in said real estate, which sale was made on May 31, 1867, to defendant for the sum of $150, which was then paid; that, on the 9th day of April, 1868, the Sheriff executed and delivered a deed to defendant by which he conveyed to defendant all the right and title, both of said Judge and said county, in said land.

The defendant then states that the County Court, on the application of defendant, made the necessary orders to enable him to obtain a patent from the State, which was issued to him in due form of law; that the plaintiff had full notice of all the facts set forth in said answer, &c. A replication was filed by the plaintiff, putting in issue the affirmative allegations in the answer.

The Circuit Court, upon a hearing of the cause, dismissed plaintiff's bill and rendered final judgment against him. The defendant, in due time, filed a motion for a rehearing, which, being overruled, he excepted, and has appealed to this court.

The only question presented for the consideration of this court is, whether the suit of the County of St. Charles against James Judge and the defendant upon the bond given for the purchase money of the land in controversy, the judgment rendered in said suit and the execution issued thereon, together with the Sheriff's sale of the property by virtue thereof, and the Sheriff's deed to the defendant, had the effect to vest in the defendant the entire equitable interest in said land, as well that held by the county as that acquired by Judge by his purchase of the same? If so, the patent was properly issued to the defendant, and the plaintiff's bill was properly dismissed.

It seems, from the record read in evidence in the suit of the County of St. Charles to the use of the Inhabitants of, &c., vs. James Judge and John Chapman, that the suit was founded on the bond executed to said county for the consideration to be paid by Judge for the land in controversy, and that Chapman was the surety of said Judge on said bond; that the petition in the case, in addition to the usual allegations in petitions on such bonds, charged that the bond was executed for the purchase money for the land in controversy, and that said plaintiff was still the owner of the land, &c., and it was therefore prayed that judgment be rendered for the amount of the bond and interest, and that a special judgment be rendered ordering the sale of said land and to foreclose whatever equity of redemption defendants might have in said land, &c.; that on the 15th day of December, 1866, a judgment was rendered in said cause. The judgment is rendered against the defendants for $652 55-100 and costs, and the judgment proceeds as follows: "And it is further considered by the Court, that whatever equity of redemption the said James Judge has in and to the following described real estate, situated in the County of St. Charles, be foreclosed, to-wit: (here follows a description of the land in controversy.) And it is further considered by the Court, that the said real estate be sold to satisfy said debt, &c." It is further provided, that if the land does not satisfy the debt named, that the residue be levied of other goods, &c., and that execution issue therefor.

An execution issued on said judgment on the 3rd day of May, 1867. The execution properly recites the whole judgment, and then proceeds as follows: "These are therefore to command you, that of the goods and chattels and real estate of the defendant James Judge, in your county, and above described, you cause to be levied and made said debt, damages, interest and costs, and that if said real estate be not sufficient to satisfy said debt, damages, interest and costs, then the residue thereof you cause to be levied of the other goods and chattels and real estate of said defendants James Judge and John Chapman," &c.

By the Sheriff's return, as found on this execution, it appears that on the 7th day of May, 1867, said Sheriff, by virtue of the said special execution, levied on the land in controversy, and described in the judgment and execution as "the property of the within-named defendant Judge," and that after the said land had been advertised for sale, as the law directs, the said Sheriff offered for sale all the right, title and interest of the defendant James Judge in and to said land, and that the same was offered at auction for cash, when John Chapman became the purchaser at and for the sum of $150, which was then paid.

It further appears that the remaining sum due on said judgment was afterwards collected on a general execution issued on said judgment out of the personal property of said Judge.

The Sheriff's deed, executed from the Sheriff to Chapman, follows the Sheriff's return on the execution, and only conveys, or purports to convey, to Chapman, the right, title and interest of James Judge in and to the land in controversy. This deed is dated April the 9th, 1868.

A deed of trust was executed to Griffith by Judge, conveying this land to him, to secure a debt to plaintiff, on the 12th of May, 1866; and on the 9th of March, 1869, a sale was made of the land, under the powers in the deed, by Griffith, when plaintiff became the purchaser, as is stated in his petition. It further appears, that in March, 1869, both the plaintiff and defendant appeared in the County Court of St. Charles county and made application to said court to have it certified to the Register of Lands of this State that the land was fully paid for, and that each of them was the lawful assignee of Judge; and to direct a patent to issue to them, &c. The County Court found in favor of Chapman, and he thereby obtained the patent for the land, as charged in plaintiff's petition.

It is contended by the plaintiff, that the defendant, by his purchase of the land in controversy at the sale made by the Sheriff, and by the deed executed by the Sheriff, in confor-

mity to said sale, only purchased the equitable interest of Judge in the land, and as Judge had previously executed a deed of trust conveying said equitable interest to Griffith, to secure a debt to plaintiff, that defendant's right to Judge's interest was subject to the lien of said deed of trust, and that said deed of trust having been foreclosed by sale under the powers therein, that defendant's interest acquired by his purchase was thereby extinguished. If it be conceded that the judgment recovered by the county, and the execution and sale made thereunder to Chapman, had no other effect than a general judgment recovered on the bond for the purchase money and a sale under a general execution issued thereon would have had, then the position of the plaintiff would have been correct. The case of Broadwell vs. Yantis, 10 Mo., 399, seems to settle that question. In that case, it appeared that one Leiper sold to Nolly certain lots, giving a title bond and retaining the legal title to secure the purchase money. Nolly then sold to Yantis, who sold to Farrar. The assignee of Leiper afterwards obtained a judgment against Nolly on a note for the original purchase money, levied an execution, which issued on said judgment, and thereby sold all the right, title and interest of Nolly in the lots. Yantis purchased at this execution sale for $500, and received a deed from the Sheriff. It was held that Nolly, having parted with his equitable title before the judgment, and Farrar having acquired the same, Yantis got nothing by his purchase, although it was under a judgment for the original purchase money to Leiper. In the opinion of the court in that case, it is stated that "Yantis cannot set up an independent title under the Sheriff's deed. So far as the title to these lots is concerned, that transaction did not effect it. By means of it Leiper obtained his purchase money; his lien was extinguished, and he held a bare legal title, subject to be transferred by a court of equity to the equitable owner. Yantis would unquestionably be the equitable owner; not, however, merely because of his payment of five hundred dollars to the Sheriff, and the consequent virtual extinguish-

ment of the lien of Leiper, but because he had also previously acquired from Nolly his equitable title; and becoming in this way the owner of the whole equitable title, with only a naked legal title outstanding in Leiper, he would be entitled, in a court of equity, to be regarded as both the legal and equitable owner of these lots." (See, also, Lumley vs. Robinson, 26 Mo., 364; Hall vs. Jones, 21 Maryland, 439.)

It is insisted, however, in this case, that the purchase of Chapman from the Sheriff was made under an execution issued on a judgment which foreclosed the right of Judge to a specific performance of the contract of purchase, and that by virtue of said purchase, that Chapman became possessed of not only the right or interest of the vendee Judge, but also of all the right and title of the county in and to the land, and that the purchase of Chapman therefore related back to the original purchase of Judge from the county, and thus cut off the right of plaintiff under his deed of trust from Judge on his equitable interest. The general rule is, that a purchaser, under a sale made to foreclose or enforce a vendor's lien on land for the purchase money, gets all of the title held by any of the parties to the action. The question in this case is, was the sale made to Chapman a proper, or any, enforcement of the vendor's lien upon this land? The judgment rendered upon the bond for the purchase money of the land against Judge and Chapman, although somewhat informal, is substantially sufficient to enforce the vendor's lien and to foreclose the right of Judge to a specific performance of the contract of purchase, and authorizes a sale of the land, to pay the amount of the judgment, and if a sale had been properly made under this judgment it would have passed the title of all parties to the record.

The execution issued on this judgment properly recited the judgment and directed a sale of the land named in the judgment, &c., and then directed the Sheriff, that if the land failed to bring a sufficient amount to pay the judgment, to levy the balance of other property, &c. This execution contained a sufficient authority to authorize the Sheriff to sell

the whole interest of all parties to the suit in the land named; but the question is, what did the Sheriff sell to Chapman by virtue of this execution, and what was conveyed to Chapman by the Sheriff's deed? The judgment and executions of themselves confer no title on any one; but there must be a sale by the Sheriff, and a deed conveying the property sold, in order to confer the title on a purchaser. (Strain vs. Murphy, 49 Mo., 337.) It is certainly also true that a Sheriff can make no valid sale not authorized by the writ. (Maupin & King vs. Emmons, 47 Mo., 304.) The sale of the land in this case made to Chapman, as evidenced by the Sheriff's return on the execution, and in the Sheriff's deed to Chapman, was of all the right, title and interest of Judge in the land in controversy, in no way differing from an ordinary sale of land under an ordinary execution issued on a general personal judgment at law. It is held, in the case of Gaston vs. White, 46 Mo., 486, that where in a proceeding against a vendee to enforce a vendor's lien upon the property sold, the judgment rendered only directed a sale of the defendant's interest in the land, in place of the land itself, that the judgment was not therefore wholly void, but that a sale under such a judgment, if regularly made, would only pass the defendant's equity in the land. In the present case, the sale made by the Sheriff, and the deed executed to Chapman, in pursuance thereof, only purports to sell and convey the interest of Judge in the land, and could, at most, have no greater effect than a sale made under a judgment and execution at law would have where the judgment had been rendered on a note for the purchase money of the land sold.

The question then is, what interest did Chapman get by his purchase? The answer is, that Judge having previously given a deed of trust on the land to secure a debt to Lewis, Chapman, by his purchase, was placed exactly in the situation of Judge, and simply acquired his rights, which were to redeem the land from the deed of trust, and pay off the purchase money to the county, which would have entitled him to a deed or patent for the land. This however was

not done, and the trustee in the deed of trust, which had all of the time been on record, was suffered to advertise and sell the land, in pursuance of the powers given him in the deed of trust, and plaintiff became the purchaser, whereby he acquired the whole equitable title of Judge in the land, and the purchase money having been paid by Judge and Chapman, which extinguished the vendor's lien, Lewis became entitled to the legal estate and title to the land.

It is, however, insisted, that before Lewis is entitled to force the legal title out of Chapman, he should be compelled to refund to Chapman the amount paid by him for the land which went to extinguish the vendor's lien in favor of the county. The defendant has relied upon no such defence in his answer; but, as the object of the judgment upon which the sale took place to Chapman was to foreclose the equity of Judge and sell the entire estate in the land, relieved of all lien for the purchase money, and as Chapman, evidently in good faith, purchased the land with the belief that he was extinguishing the vendor's lien, and also receiving whatever equity had ever existed in Judge, and when it must be conceded that if the Sheriff had not mistaken his duty in the sale and conveyance of the land to Chapman, the whole title would have passed, and when it is further admitted that the money paid by Chapman actually went to extinguish the vendor's lien, we can see no reason why, under a proper application to the court, Chapman could not be subrogated to the rights of the county in its vendor's lien, to the extent that the amount so paid by Chapman went to the extinguishment of said lien.

The judgment will be reversed, and the case remanded, with leave to defendant to file an amended answer in the Circuit Court.

Judge Wagner dissents. The other judges concur.