FERGUSON vs. HILLMAN, imp.

*April 12 — May 10, 1882.*

FRAUDULENT CONVEYANCE. *(1) Evidence of fraud as against creditors. (2) Fraudulent grantee not protected as to amount paid. (3) Personal judgment against him.*

1. The finding of the court below that a conveyance of land and mortgages of chattels made to the defendant H. were void as against the plaintiff, a judgment creditor of the grantor, held to be sustained by the evidence, stated *infra.*

2. As against his grantor's creditors, a fraudulent grantee or mortgagee has no claim to protection in equity for the amounts actually paid or advanced by him to the grantor as consideration for the deed.

3. Where it appeared that the fraudulent grantee had received as proceeds of sales of the property conveyed or mortgaged to him a certain sum in excess of the amount which had been applied in payment of the grantor's debts, there was no error as against him, in rendering a *personal judgment* against him for such sum, at the suit of the creditor.

APPEAL from the Circuit Court for *Fond du Lac* County. The case is thus stated by Mr. Justice TAYLOR:

"This is an action in the nature of a creditors' bill, brought against H. G. Matthews, against whom the plaintiff had recovered a judgment at law for the sum of $1,000 and more, and against *F. M. Hillman,* a grantee of certain real estate theretofore owned by the said Matthews, and also a mortgagee of certain personal property of the said Matthews. The complaint charges that the conveyances of the real estate were made with intent to defraud the creditors of the said Matthews, and to hinder and delay them, and especially to defraud, hinder and delay the plaintiff in the collection of his debt. It also charges that the chattel mortgages were given without consideration, and for like fraudulent purposes. In addition to the ordinary prayer for relief, the plaintiff prayed judgment against the defendant *Hillman* that he be compelled to apply all sums received by him upon said chattel mort-

gages, or so much thereof as should be necessary to pay the plaintiff's judgment, in payment thereof. The answer of the defendants denied all fraud in the transaction, and alleged that the conveyances were made in good faith, and for a sufficient and valuable consideration, and that the chattel mortgages were also made in good faith and for value. The action was tried by the court without a jury, and after hearing the proofs, the court made and signed the following findings of fact:

"*First.* That all the material allegations of the complaint are true, except as hereinafter specifically found.

" *Second.* That the plaintiff duly recovered judgment against the defendant H. G. Matthews in this court, August 6, 1880, for the sum of $1,087.53; that the same was on said day duly entered and docketed, and subsequently execution duly issued thereon, which was duly returned wholly unsatisfied, all as alleged in the complaint; and that there is due and unpaid upon the said judgment, at the date of these findings, the sum of $1,165.97.

" *Third.* That said Matthews, prior to the 28th day of June, 1880, was the owner and in possession of the real estate described in the complaint, and also of the personal property covered by the two chattel mortgages specified in the complaint; that such real and personal property was all the property of said Matthews not exempt from seizure and sale upon execution; and that the said real estate was on that date reasonably worth $15,600, and the said personal property $3,500.

" *Fourth.* That on the said 28th day of June, 1880, and as a part of one transaction, said Matthews pretended to sell and convey to the defendant *Hillman* all of said real estate, under and by three warranty deeds, bearing date on that day and executed and recorded as alleged in the complaint; and also conveyed, by two chattel mortgages, all of his said personal property to *Hillman*, which mortgages are correctly

Ferguson vs. Hillman, imp.

described in the complaint, and were filed in the town clerk's office of the town of Metomen, as therein alleged; that the consideration of the said transfer of real estate was the sum of $9,114.77, in the debts and obligations of said Matthews, actually then paid or assumed to be paid by *Hillman* for Matthews; and that there was no valid consideration for the giving of said two chattel mortgages.

"*Fifth.* That at the time of the execution and giving of said warranty deeds and chattel mortgages, and for a long time prior thereto, said Matthews was and had been insolvent, in failing circumstances, and unable to pay his debts, which facts were then well known to *Hillman;* and that such indebtedness of Matthews exceeded $20,000, and *Hillman* knew that it exceeded $17,000.

"*Sixth.* That said warranty deed and chattel mortgages were given by Matthews to *Hillman* on the said 28th of June, 1880, with intent and for the purpose, on the part of said Matthews, of covering up his property, so that the same could not be reached by attachment, execution or other process of the court against him, said Matthews, or against his said property, and with the intent on his part of hindering, delaying and defrauding his creditors, and among them the plaintiff in this action, who for a long time prior thereto had been a creditor of said Matthews in a sum not exceeding $1,000.

"*Seventh.* That the intent and purpose of Matthews to so cover up his property, and to so hinder, delay and defraud his creditors, was at that time known to *Hillman*, and participated in by him, and said *Hillman* took and received the said warranty deed and the said chattel mortgages with the intent and purpose on his part of securing a preference to himself by such deeds, and of assisting Matthews to so cover his said property, real and personal, and to so hinder, delay and defraud the creditors of Matthews, and to hold the said property, real and personal, for the use and benefit of Mat-

thews, and to prevent the creditors of Matthews, and among them the plaintiff in this action, from the just and proper collection of their claims against Matthews, or making the same by due process of law out of said property.

"*Eighth.* That *Hillman* has received from Matthews the full sum of $3,500, the pretended consideration for the giving of the chattel mortgages, of which amount *Hillman* has so received at least $1,500, nominally under and by virtue of said chattel mortgage, but really for the use and benefit of Matthews, and which ought, so far as is necessary in justice and equity to be applied to the payment of the plaintiff's demand herein against said Matthews.

"*Ninth.* That the first of said warranty deeds, bearing date June 28, 1880, was executed by Matthews and his wife, and covered lots Nos. 1 and 2 in Phillips & Morris's addition to the village of Brandon, according to the recorded plat thereof, and was recorded in the office of the register of deeds for Fond du Lac county on the 28th day of June, 1880. And the second of said warranty deeds, bearing date on the same day, was executed in the same manner, and covers lots Nos. 2 and 3 in No. 4 of first addition to said village of Brandon, according to the recorded plats thereof, being what is known as the Matthews steam-mill property in said village, and was recorded in the office of the register of deeds for Fond du Lac county on said 28th of June, 1880. And the third of said warranty deeds, bearing date on the same day, was executed in the same manner, and conveyed the south half of the south-east quarter of section No. 21, and the north half of the north-east quarter of section 28, and also the south quarter of the north half of the north-west quarter of the south-west quarter of section No. 23, and also the north three-quarters of the south half of said north-west quarter of the south-west quarter of said section No. 23, excepting and reserving therefrom one-half acre of land in the south-east corner of said section No. 21, heretofore deeded

and used for cemetery purposes; and also excepting and reserving one-half acre of land in the north-east corner of said section No. 28, heretofore deeded and used for school purposes; and was recorded in the office of the register of deeds for Fond du Lac county on said 28th of June, 1880. And that all of said real estate above described is situate in town No. 15 north, of range No. 14 east, being the town of Metomen, in the county of Fond du Lac, state of Wisconsin.

"*Tenth.* That Matthews executed a mortgage bearing date February 1, 1878, on a portion of the above described real estate, to George Jess & Co., of Waupun, Wisconsin, to secure the nominal sum of $4,000, which mortgage was recorded in the office of the register of deeds for Fond du Lac county on the 18th day of February, 1878; that this mortgage was held by said George Jess & Co. as collateral security to one of the obligations of Matthews, assumed, as above found, by *Hillman,* which was discharged by him as a matter of fact, and said mortgage should be satisfied of record. That on the 4th day of June, 1880, George Jess and David Metcalf duly recovered judgment in the county court of Fond du Lac county against said Matthews in the sum of $4,000.46, damages and costs, which judgment was on said day duly docketed in the office of the clerk of said county court, and was another of the debts or obligations of the said Matthews, assumed, as above found, by *Hillman,* and was actually paid by him, and should be discharged of record.

"*Eleventh.* That Matthews, on the 22d day of April, 1870, gave a mortgage on a portion of the real estate above described to Jediah Bowen, as treasurer of the Ripon College, to secure the payment of $2,000 and interest, which mortgage was recorded in the office of the register of deeds for Fond du Lac county on the 27th day of April, 1870; that this mortgage was another obligation of Matthews, assumed, as above found, by *Hillman,* but of which *Hillman* took an assignment, and the same has not been satisfied of record· and

that *Hillman*, on the 3d day of July, 1880, gave a mortgage on a portion of the real estate above described to George L. Field, Esq., of Ripon, Wisconsin, to secure the payment of the sum of $4,500, and interest, which mortgage was recorded in the office of the register of deeds for Fond du Lac county on the 13th day of July, 1880, and is still a lien upon the portion of said real estate mortgaged."

" The following were the conclusions of law:

"*First.* That the plaintiff is entitled to judgment against the defendant for the sum of $1,165.97, with interest thereon from the date of these findings, together with the costs and disbursements of this action.

" *Second.* That said judgment be entered as a personal judgment against the defendant *Hillman* to the full amount thereof, in case it does not exceed $1,500, to be collected by execution against the property of said *Hillman* in like manner as other judgments; and in case it exceeds $1,500, then execution go against the property of said *Hillman* only to the amount of $1,500.

" *Third.* That the plaintiff is entitled to judgment that, in case the judgment herein entered as above found exceeds $1,500, or in case the plaintiff is unable to make the said judgment, up to the amount of $1,500, out of the property of the defendant *Hillman*, then the real estate above described be subject to execution upon the judgment herein for the balance thereof remaining unsatisfied; and that judgment be entered, and that in such case the three warranty deeds above described be vacated and set aside, and the said real estate, and the whole thereof covered by said deeds, be subject to execution issued on the judgment herein so remaining unsatisfied, and that the same be sold in like manner as lands are usually sold on execution; subject, nevertheless, to the said mortgages aforesaid given to Jediah Bowen, as treasurer, and to the mortgage aforesaid given to George L. Field, Esq., and the accrued interest thereon, and also subject

to such further sum as will, in addition to the amount of said two mortgages and interest, equal the sum of $9,114.77, with interest thereon at the rate of seven per cent. per annum from the 28th day of June, 1880.

"*Hillman* excepted to the fourth, fifth, sixth, seventh and eighth findings of fact, and to the first, second and third conclusions of law. The plaintiff excepted to so much of the fourth finding of fact as finds that 'the consideration of the transfer of the real estate was the sum of $9,114.77, in the debts and obligations of the defendant Matthews paid or assumed to be paid by *Hillman*.' He also excepted to so much of the second conclusion of law as determines that the real estate involved in the action should be sold on exe- cution, subject to the mortgage given to Jediah Bowen as treasurer, and to the mortgage given to George L. Field, Esq., and the accrued interest on said mortgages, and also subject to such further sum as will, in addition to the amount of said two mortgages and interest, equal the sum of $9,114.77, with interest thereon at seven per cent. from June 20, 1880; and to the failure of the court to hold that the said real es- tate should be sold to satisfy the judgment in this action, subject to no liens or incumbrances whatever except the said mortgage of George L. Field.

"Judgment was afterwards rendered in favor of the plaint- iff and against the defendant *Hillman* as follows: 'It is ad- judged and decreed that the plaintiff have and recover of the defendants, H. G. Matthews and *F. M. Hillman*, the sum of $1,168.23, together with the costs and disbursements of this action, taxed at the sum of $245.37, making in all the sum of $1,413.60. And it is further adjudged and de- creed that the above judgment be entered and docketed as a personal judgment against the defendant *F. M. Hillman* to the full amount thereof, only in case it does not exceed $1,500, and that execution issue herein against the property of the said defendant *F. M. Hillman* to collect the full

amount thereof up to the sum of $1,500.' The judgment then further provides if the judgment shall exceed the sum of $1,500, or if the plaintiff shall be unable to collect the amount out of the property of the said *Hillman*, then the deeds of real estate made by Matthews to said *Hillman* shall be set aside, and the same shall be sold to satisfy said judgment, or so much thereof as shall not be satisfied out of the property of the said *Hillman;* subject, however, to the mortgages thereon and other claims of the said *Hillman* amounting to $9,114.77, with interest from the 28th of June, 1880, as directed in the third conclusion of law. The defendant *Hillman* excepted to the judgment and appealed therefrom."

*Charles W. Felker*, for the appellant.

*Geo. E. Sutherland*, for the respondent.

TAYLOR, J. After a careful consideration of the evidence given upon the trial of this action, we are constrained to say that the findings of fact by the learned circuit judge are sustained by the evidence, and we see nothing in the record which would justify us in setting aside such findings, or any one of them. The finding as to the value of the real estate conveyed is, perhaps, the most questionable of them all, and yet that is certainly sustained by the evidence given on the trial; and if the fraudulent character of the transaction were based solely upon it, it would probably be sustained by this court under the rule so frequently stated, that this court will not set aside a finding of fact unless it be against the clear preponderance of the evidence. But, from an examination of the whole case, it is clear that the question of the value of the real estate conveyed, as compared with the consideration claimed to have been paid therefor, was not the only nor the most satisfactory reason for declaring the transaction fraudulent and void as to the creditors of Matthews not provided for by the conveyances. The evidence clearly establishes the

fact that Matthews was in embarrassed circumstances and unable to pay his debts; that *Hillman* was well acquainted with all the facts; and that, knowing all the facts, he took conveyances from Matthews of all his real estate not exempt from execution, paying therefor nothing except the mortgages and judgment liens thereon, and the debt of one creditor, in addition to the debt due to *Hillman* himself. At the same time he took two chattel mortgages upon all the exempt personal property, with trifling exceptions, and to make a consideration for such mortgages he gives his promissory note for $3,000, due in three or six months, and in exchange for his note of $3,000 took two notes of Matthews, one for $1,500 and the other for $2,000, payable at a future date, and the payment of these notes is secured to *Hillman* by the chattel mortgages. The $500 difference between the notes is claimed to be a debt due from Matthews to *Hillman*.

These pertinent facts, which are undisputed, and which have in themselves a strong tendency to establish a fraudulent intent as to the creditors not provided for, are supplemented by a mass of other testimony, more or less satisfactory, all tending to establish the unfairness of the whole transaction as to the unprotected creditors of Matthews, and the intent to defraud or hinder and delay them in the collection of their demands against Matthews. Upon a consideration of all the evidence, we have no hesitation in saying that the findings of fact are fully sustained, and must stand as the basis of the judgment which should be rendered in the action. The only difficulty we have with the case is in the form of the judgment rendered. Was the plaintiff entitled to a personal judgment against the appellant for the amount of his claim against the defendant Matthews not exceeding $1,500? The learned counsel for the appellant very earnestly contends that no such judgment should have been entered. The judgment is no doubt an unusual one in a creditor's action, and yet there can be no good reason assigned why it ought

not to be rendered, provided the evidence shows that the fraudulent grantee or mortgagee has received that amount of money as the proceeds of the property fraudulently transferred to him, or upon his fraudulent chattel mortgages. The rule of law is well established by the courts, that a grantee of real or personal estate, when it is shown that the purchase was made with intent to defraud or to hinder and delay creditors, has no equity as against such creditors to be protected for the amount which he actually paid on such purchase. See cases cited below. Under this rule it is clear that if the personal property mortgaged to *Hillman* had remained either in his hands or in the hands of Matthews, it would have been subjected to the payment of the plaintiff's judgment notwithstanding he had paid his note for $3,000, given as the consideration for the mortgages, or if his note had been transferred to a *bona fide* holder so that he would be compelled to pay when due; or if *Hillman* had in fact loaned to Matthews $3,000 in cash and taken the chattel mortgages to secure the payment of the money so loaned, yet, if the loan was made and the mortgages taken to hinder, delay or defraud the creditors of Matthews, the mortgaged property would be subject to the claims of the creditors of Matthews, and *Hillman* would have had no equitable claim to a preference for the money so loaned.

The reason and justice of this rule are apparent when we consider the effect of any different rule upon the rights of the creditors. If the fraudulent grantee can be protected for the amount actually paid by him at the time of the fraudulent transfer, then this would happen: The fraudulent debtor could make a sale with intent to avoid the payment of his debts, take the money and leave the country, and the purchaser have knowledge that he intended to do so, and yet be protected for the money so paid and appropriated. A rule which would lead to such results cannot be tolerated by courts. The rule as above stated has been recognized and

adopted by this as well as other courts. *Gardinier v. Otis*, 13 Wis., 460; *Stein v. Hermann*, 23 Wis., 132; *Avery v. Johann*, 27 Wis., 246; *Union National Bank v. Warner*, 12 Hun, 306; *Briggs v. Merrill*, 58 Barb., 389; *Fullerton v. Viall*, 42 How. Pr., 294; *Goodhue v. Berrien*, 2 Sandf. Ch., 630, 636. See also a long list of authorities upon this question cited by Mr. Bump in his work on Fraudulent Conveyances, p. 198, note 2; May's Stat. Eliz., 73, 74.

If the fraudulent grantee in possession of the property of the debtor cannot be protected for the money or other consideration he may have given for the transfer, as against the creditors of such debtor, it would seem to follow as a necessary consequence that such grantee cannot be protected in the possession of the proceeds of such property received by him on a sale thereof. The property in the hands of the fraudulent purchaser is held by him in trust for the creditors of his fraudulent vendor, and when the property is converted into money the money is impressed with the same trust. The original conveyance being void as to creditors, no title as to them ever passed to the grantee; and if he sells it and receives the money, he must hold the money for the benefit of the creditors. In equity such money in the hands of the fraudulent grantee is held for the benefit of the creditors; and, although they may not be able to maintain an action at law for money had and received for their use, because they were never the owners of or had the title to the property which has been converted into such money, yet a court of equity, having all the parties interested before it, may make such order as to the application thereof as would be just.

If the court in a proper case would have the power to order the fraudulent grantee to pay money received by him in satisfaction of the debt of a creditor, then the fact that it directed a personal judgment to be rendered against him for the money so received, and that the amount be collected on execution, would be a mere matter of form, which does not prejudice his rights, and of which he cannot complain.

The case of *Fullerton v. Viall,* 42 How. Pr., 294, was a case very much like the present in its facts. In that case it appeared that the defendant had taken a conveyance from a debtor of some real estate upon which there was a mortgage of $800, agreeing to pay in addition the sum of $1,000; $500 being a debt due from the judgment debtor to the grantee, and $500 was paid to the judgment debtor in cash. Before the creditors' suit was commenced the grantee had sold the real estate so conveyed to him to a *bona fide* purchaser, and realized from such sale, as the court found on the trial, the sum of $2,270. The court found that the conveyance was made in fraud of the creditors of the grantor, and that the creditors were entitled to judgment against the defendant, the fraudulent grantee, for the value of the premises conveyed to him, over and above the prior valid incumbrances thereon. In this case the recovery was not limited to the amount received by the fraudulent grantee on the sale, but his liability was held to extend to the value of the property fraudulently received by him and which he had put beyond the reach of the creditors of his fraudulent grantor, subject only to prior valid incumbrances thereon. He was neither allowed credit for his own debt, which constituted a part of the consideration he gave for the same, nor for the $500 he paid to his grantor in cash. This case went to the court of appeals and was there affirmed, but does not seem to have been reported. The case is, however, cited and approved in the case of *Union Nat. Bank v. Warner,* 12 Hun, 306–308.

In the case at bar there is an abundance of evidence showing that *Hillman* received from the sales of the property, which was found to have been fraudulently conveyed and mortgaged to him, a sum far exceeding the sum of $1,500, the amount which the court charged him with in the judgment. He admits that he sold one of the parcels of real estate for the sum of $500, and the barrel stuff for the sum of $494; and it also appears pretty clearly that he received the whole of the $2,000 note of the debtor, Matthews, which was

secured by one of the chattel mortgages. All of this latter sum was received after the commencement of the plaintiff's action. Under the rules of law above stated he would have no right to retain the money received on the $2,000 chattel mortgage to indemnify himself for the money he paid in discharge of his $3,000 note given to Matthews. The chattel mortgages being fraudulent and void as to the creditors of Matthews, he cannot be credited with any sums which he may have paid as the consideration of such mortgages, as a set-off against what he has received upon such mortgages. Notwithstanding the mortgages, the property covered by them was still the property of the judgment debtor as to his creditors, and all money received by *Hillman* arising out of the sale of such property, and received by him, would remain in his hands as a fund held in trust for such creditors. It is evident, however, that the learned circuit judge did not intend to hold the appellant liable to the plaintiff to the extent above suggested, but only for such sums as it appeared from the evidence he had received upon such mortgaged property in excess of what the evidence showed had been applied to the payment of the debts of Matthews either by Matthews or by *Hillman*. Holding this view of the case, the learned judge found as a fact that the appellant had received at least the sum of $1,500, upon all of the transactions between Matthews and *Hillman*, over and above what had been applied to the payment of Matthews' debts, and so charged him with that sum only. This view of the case seems to be supported by the evidence, and as it is more favorable to the appellant than the strict rules of law applicable to the case would justify, he is not in a position to complain of that finding or of the judgment based thereon.

We think the judgment of the circuit court is well sustained by the evidence and should be affirmed.

*By the Court.*— The judgment of the circuit court is affirmed.