THE HAMILTON NATIONAL BANK OF BOSTON AND OTHERS, APPELLANTS AND RESPONDENTS, *v.* RICHARD H. HALSTED, RESPONDENT AND APPELLANT, IMPLEADED WITH OTHERS.

*Fraudulent vendee — credited with the payment of incumbrances on the assigned property — a beneficiary under an alleged illegal trust is a proper party to an action to set it aside.*

While the courts will extend no aid or assistance to a fraudulent vendee or grantee of property, he may still be credited, in an action brought by a creditor of the fraudulent vendor to set aside the conveyance, with what may have been paid by him to relieve the property from an incumbrance which had previously, in good faith, been created against it.

The rule prohibiting the allowance of sums disbursed by the fraudulent vendee has been generally extended no further than to deny his right to reimbursement for what he may have paid to the vendor, or to others by way of satisfying unsecured debts.

A transfer of property to a third party by an insolvent debtor, to hold for one of his children, cannot be set aside in an action brought by a creditor, to which the daughter of the debtor, the beneficiary under such trust, is not made a party.

APPEAL by the plaintiffs from a judgment entered, at a Special Term held in the county of New York, in the office of the clerk of the county of New York on the 7th day of October, 1889; also an appeal by the defendant Richard H. Halsted from so much of said judgment as directed that the said Richard H. Halsted pay over and deliver to the said receiver the sum of $5,310, being the amount improperly received by the said Richard H. Halsted, by virtue of a

preference contained in a general assignment made by the defendants herein, with interest thereon from the 17th day of October, 1884, making in all the sum of $6,816.61.

The action was brought by the plaintiffs, as judgment-creditors of the defendants, composing the firm of Halsted, Haines & Co., to set aside as fraudulent a general assignment made by the judgment-debtors to one Lewis May, on July 12, 1884, in which the defendant Richard H. Halsted was preferred for the sum of $20,346; to set aside as fraudulent a transfer of securities of the value of $77,000, made on June 11, 1884, in alleged contemplation of the said general assignment; to compel Richard H. Halsted to pay over to the receiver appointed in said judgment the moneys received in pursuance of the preference, and to deliver to the receiver the securities transferred or their value.

*Charles E. Hughes*, for the plaintiffs.

*William Hildreth Field*, for the defendant.

DANIELS, J.:

The firm of Halsted, Haines & Company became insolvent, and on the 12th of July, 1884, they executed and delivered to Lewis May an assignment of their firm and individual property for the benefit of their creditors. This assignment was found to have been fraudulent on account of preferences contained in it exceeding the indebtedness of the firm to the individuals in whose favor they were declared. And no controversy exists upon this appeal as to the justness of that conclusion, which was reached by the court upon the trial of another action in favor of judgment-creditors. But the controversy in this action relates more particularly to the disposition of property owned by one of the firm, at or about the time when the assignment was executed and delivered. This property consisted in large part of shares of stock owned by William M. Halsted. It had been hypothecated by him with the New York Life Insurance and Trust Company to secure a loan of the sum of $65,000. The money obtained upon the loan was paid into the firm of Halsted, Haines & Company. And on or about the 11th of July, 1884, immediately preceding the assignment, the pledgor, William M. Halsted, transferred these certificates to his son, the defendant

Richard H. Halsted. He paid, for this transfer, the loan only which had been obtained on the pledge of the certificates, and the certificates were obtained from the Insurance and Trust Company and delivered to him. At the time the certificates were in this manner redeemed and transferred to the defendant they were worth not less than the sum of $77,000. And it was found by the court upon evidence which it must be assumed, as it has not been inserted in the case, supported the finding, that this transfer was made and received with the intent, on the part of both of the parties to it to hinder, delay and defraud the creditors of the defendant, William M. Halsted. And upon this part of the case judgment was directed in favor of the plaintiffs, who were judgment-creditors of this firm, for the difference between the sum for which the certificates had been pledged and their value, being the sum, as it was found and adjusted by the court, of $11,500, with interest from the 11th of July, 1884. The plaintiffs excepted to the allowance made, out of the value of the securities, of this sum of $65,000, for which they had been pledged to the Life Insurance Company. And the position has been taken, in support of their appeal, that the defendant Richard H. Halsted, having himself received the certificates with the intent to hinder, delay and defraud the creditors, should have been held to account for their entire and full value, without the deduction of this sum of $65,000, which the Life Insurance Company had loaned upon their credit. But while it is true that the courts will extend no aid or assistance to a fraudulent vendee or grantee of property, it does not follow, from this principle, that he is not entitled to be credited with what may have been paid by him to relieve it from incumbrances previously, in good faith, made upon it. Such incumbrances are not tainted in any respect with the fraudulent designs of the vendor and purchaser. But so far as the transactions are included within the terms of the fraudulent disposition of property, there the courts have ordinarily denied all relief by way of indemnity to the purchaser. And he will not be relieved from complications, expenses or losses paid out or incurred by him in the promotion and success of the fraudulent arrangement. This was held upon a consideration of the cases by this General Term in *Smith* v. *White* (27 N. Y. St. Rep., 227). But the court was not then called upon to consider whether the fraudulent vendee

should be indemnified out of the proceeds of the property, for the expenses of its redemption from preceding valid charges or incumbrances. And in the cases which have been cited as authorities supporting the position taken by the plaintiffs in this respect, the decisions have been generally extended no further than to deny to the fraudulent vendee his right to reimbursement for what he may have paid to the vendor, or to others, by way of satisfying debts unsecured upon the property. Those payments were included ordinarily within the terms of the fraudulent transfer. And the courts will not relieve the party implicated in the fraud from the consequences of the voluntary acts performed by himself within the scope and intent of the fraudulent disposition. The cases of *Boyd* v. *Dunlap* (1 Johns. Ch., 478); *Sands* v. *Codwise* (4 Johns., 53³); *Bean* v. *Smith* (2 Mason, 252); *Briggs* v. *Merrill* (58 Barb., 389); *Bleakley's Appeal* (66 Penn., 187); *Goodwin* v. *Hammond* (13 Cal., 168); *Wood* v. *Hunt* (38 Barb., 302); *Borland* v. *Walker* (7 Ala., 269); *Williamson* v. *Goodwyn* (9 Gratt., 503); *Union, etc., Bank* v. *Warner* (12 Hun, 306) and *Seivers* v. *Dickover* (101 Ind., 495), are within this general principle, while *Ferguson* v. *Hillman* (55 Wis., 188); *Wiley* v. *Knight* (27 Ala., 336); *Thompson* v. *Bickford* (19 Minn., 18) and *Railroad Co.* v. *Soutter* (13 Wall., 517) do tend to support the position taken in behalf of the plaintiffs. But neither the case of *Davis* v. *Leopold* (87 N. Y., 620), nor any other authority sanctioned by the determination of the court of last resort in this State, supports this position.

In the case of *Robinson* v. *Stewart* (10 N. Y., 189) the court went even further than this and allowed the fraudulent vendee to stand in the place of creditors whose debts he had paid, for reimbursement out of the proceeds of the property, on an equality with the other creditors. It was there said in the opinion that "it is entirely equitable that the defendant should be substituted in the place of the creditors whose debts he has paid. Although the conveyances were void as to creditors, they were valid between the parties ; and, according to the statement in the answer, these debts were to be paid by the defendant as a consideration in part for the conveyances. The complainants have not been injured by the payments made by the defendant, for all they could claim under the circumstances would be their proportionate share of the avails of the property." (Id., 196.)

And that extended the principle then applied beyond the application made of it in the determination of this action by the judgment from which the plaintiffs' appeal has been brought. In *Loos* v. *Wilkinson* (113 N. Y., 485) this subject was still further considered by the court. And it was held there, that the fraudulent grantee was entitled to be reimbursed for what he had expended by the way of reducing or paying valid incumbrances upon the property. And that, as well as the earlier case referred to, clearly sanctioned the disposition made of this part of the controversy at the trial. And this disposition seems to be consonant to the reason and justice of the case, for the indebtedness which was paid by this defendant to obtain possession of the certificates had been legally and in good faith created. It was in no respect the result of the fraudulent dealings between the debtor and the defendant, but it was entirely separate and distinct from all they had become implicated in, through the transfer of these certificates by the debtor to this defendant, who is his son. It was after that had become consummated that the proceedings were taken for the redemption of the certificates from the indebtedness they had been pledged to secure. That was a separate and distinct transaction of itself, in no manner within the scope or purpose of the fraud, but the fraud exclusively related to the gift of the debtor's interest in these certificates to his son. And for that, the plaintiffs were entitled to such redress as would appropriate this excess in the value of the certificates to the payment of their debts. And they were neither equitably nor legally entitled under the authorities in this State, as the law has been finally announced, to any more than that.

The defendant has insisted that a still further credit should be made in his favor by way of reducing the difference between the indebtedness for which the certificates had been hypothecated, because of his failure to realize the full difference from a portion of the shares. But there seems to be no reason to doubt that these shares, at the time when they were received by him, were of the fair market-value at least of this difference. And for that he was equitably held liable to account to the plaintiffs.

He was also held liable to pay the sum of $6,805 on account of moneys received by him from the assignee for that sum held for the benefit of Bertha Halsted. She is a daughter of the defendant

William M. Halsted, who was a member of the insolvent firm making the assignment. And from his testimony, and that of the defendant Richard H. Halsted, it appears that the former transferred to the latter stock held by him in the Importers and Traders' Fire Insurance Company for the benefit of his youngest daughter. This transfer took place some time in the year 1882. And the company subsequently went into liquidation and settled up its affairs, and paid to Richard H. Halsted the sum of $5,300 as the amount apportioned to these shares. He invested the same money by way of a loan in the firm of Halsted, Haines & Co. And when they made their assignment they preferred him in it for an amount which included this sum of $5,300. And the assignee paid to him, less a percentage upon the amount, this sum of money as well as the residue of that for which he had been preferred. And the court held, inasmuch as William M. Halsted was insolvent at the time when this stock was given to his son for his sister, that it was a fraudulent disposition of it which the plaintiffs were entitled to impeach and to have the money appropriated to the payment of their debts.

It has been stated in the argument of the defendants' appeal that this money had been paid over to Bertha Halsted. But there is neither evidence establishing that to be the fact, nor any finding to that effect contained in the case. The most that was said in the way of proof was by William M. Halsted, who stated that he understood that the money had been given to her. But that, obviously, was no evidence in proof of the fact. And Richard H. Halsted in his relation of the transaction said nothing supporting the existence of this payment as a matter of fact.

All the debts included in the judgments, with one exception, were contracted by the firm subsequent to the time when this stock was delivered to the defendant Richard H. Halsted for his sister Bertha. And the only debt which may have been contracted prior to that event is that owing to the National Bank of the Commonwealth, of Boston, which is stated to have been contracted prior to the 12th of July, 1882. Whether that was before the gift of this stock for the donor's daughter Bertha has not been made to appear in the case. And it may be an important circumstance affecting its disposition on account of what has been held in *Todd* v. *Nelson*

(109 N. Y., 316) and *Neuberger* v. *Keim* (53 Hun, 60). But, without considering this question, a fundamental difficulty is presented in the case invalidating this adjudication, and that is, that Bertha Halsted was not made a party to the action. Richard H. Halsted had no interest whatever in this sum of money, but he held it for the benefit of his sister, and substantially only as her agent, liable to account for it and pay it over to her at any time when that might be demanded. She was legally as well as equitably the owner of this money, unless the transaction through which it had been acquired could be impeached against her as fraudulent. And that could not be done without making her a party to the action. And under section 452 of the Code of Civil Procedure it was necessary for the court, even if the parties did not require it, to direct her to be brought in before a complete disposition of this part of the controversy could be made. That section has provided where a complete determination of the controversy cannot be had without the presence of other parties, the court must direct them to be brought in. Instead of doing that her right to this money was contested, litigated and determined without her presence, and without the presence of any person who was entitled to represent her as a defendant in the action, for even if the defendant Richard H. Halsted should be held in a general sense to represent her as a trustee, he could only do that under section 449 of the Code of Civil Procedure where an action should be brought in her behalf by him. She could not be divested of her property without being brought into the action and afforded an opportunity of contesting the plaintiffs' right to recover it.

This part of the judgment, accordingly, cannot be sustained, but it should be reversed and a new trial ordered, with costs to abide the event, and the court should direct her to be brought in as a party defendant in the action, and the residue of the judgment should be affirmed, without costs.

VAN BRUNT, P. J., and BRADY, J., concurred.

That portion of judgment affecting rights of Bertha Halsted reversed and new trial ordered, with costs to abide event, and that the court direct her to be brought in as a party defendant in the action. The residue of the judgment affirmed, without costs.