## Daisy Roller Mills *et al vs.* George A. Ward.

Opinion filed January 8th, 1897.

### Fraudulent Conveyances—Parties to Action.

In an action brought by judgment creditors of the grantors to set aside conveyances of real estate as fraudulent and void, and in which no accounting for rents and profits is asked, it is not necessary to bring in as a party defendant a receiver of the rents and profits of said real estate, appointed long after the conveyances were made, and in an action to which none of the plaintiffs in this action were parties.

### Execution in Name of Deceased Judgment Creditor.

Under § 5110, Comp. Laws, where, after judgment is rendered, the judgment creditor dies, execution may properly be issued upon the judgment by the representatives of the deceased, and in his name. Formal proceedings reviving the judgment in the name of the representatives are not now necessary.

### Void Transfer.

Following the ruling of this court upon practically the same evidence in *Paulson* v. *Ward*, 58 N. W. Rep. 792, 4 N. D. 100, it is *held* that the conveyances here attacked were executed and received for the purpose of defrauding the creditors of the grantors, and are, as against these plaintiffs, void.

### Conveyances Made to Defraud One Creditor Void as to All.

Where, in an action by creditors of the grantors to set aside conveyances of real estate as fraudulent and void, it is shown that the conveyances were executed and received for the purpose of defrauding any creditor of the grantors, then, under § 5052, Rev. Codes, such conveyances are fraudulent as to all creditors of the grantors.

### Fraudulent Grantee Cannot Hold Land as Security for Advances.

Where, at the time of the execution of the conveyances of real estate made and received for the purpose of defrauding the creditors of the grantors, the grantee, as a part of the same transaction, agrees with the grantors to pay off certain existing valid encumbrances upon the real estate so fraudulently conveyed, and subsequently, and in pursuance of such agreement, the grantee pays such encumbrances, he cannot, when such conveyances are declared fraudulent and void as against the creditors of the grantors, hold such conveyances as security for the amounts so paid.

### Rights of Purchaser of Judgment.

But where, at the suit of one judgment creditor of the grantors, such conveyances are declared fraudulent and void, and the lien of the judgments of such creditor are declared superior to any claim of the grantee under such conveyances, and thereafter such grantee purchases such judgments, and has them assigned to a trustee for his benefit, in such case, when another action is

brought by other judgment creditors of the grantors to set aside the same conveyances, and a decree to that effect is obtained, and the land ordered sold upon executions issued upon the latter judgments, the grantee is entitled to have a provision in such decree declaring the liens of the judgments so purchased and held by him, through his trustee, senior and superior to the liens of any of the judgments held by the plaintiffs in the second action.

Appeal from District Court, Traill County; *McConnell*, J.

Action by the Daisy Roller Mills and others against George A. Ward and others to set aside fraudulent conveyances. From a decree for plaintiffs, defendant's appeal.

Modified.

*M. A. Hildreth*, for appellant.

An execution issued after the death of the judgment creditor is void, *Stewart* v. *Nuckols*, 50 Am. Dec. 127; *May* v. *State Bank*, 40 Am. Dec. 726; *Meyer* v. *Mintoye*, 106 Ill. 414; *Swink* v. *Snodgrass*, 52 Am. Dec. 190. Hurley, the receiver of the lands of Ward and Hall should have been made a party to this action. In equity actions all persons effecting the status of the property must be brought in and made parties. *Hallet* v. *Hallet*, 2 Paige Ch. 12; *Bailey* v. *Ingley*, 2 Paige Ch. 277; *P. & N. E. R. Co.* v. *Ryerson*, 36 N. J. Eq. 116; *Wilkinson* v. *Dodd*, 40 N. J. Eq. 130; *LaGrange* v. *Merrill*, 3 Barb. Ch. 625; *Armstrong* v. *Hall*, 17 How. Pr. 78. The grantee in a fraudulent conveyance who has paid incumbrances against the property prior to that of the judgment creditor, will be protected to the extent of his advances so made. *Robinson* v. *Stewart*, 10 N. Y. 189; *Loos* v. *Wilkinson*, 113 N. Y. 485; *Hamilton National Bank* v. *Halsted*, 56 Hun. 530, 134 N. Y. 520; *Keene* v. *Wilcox*, 11 Paige Ch. 595; *Clute* v. *Emerich*, 26 Hun. 17; *Phillips* v. *Chamberlain*, 61 Miss. 740. Where there is constructive fraud only a court of equity will protect the purchaser of the property. *Van Kurran* v. *McLaughlin*, 19 N. J. Eq. 193; *Tompkins* v. *Sprout*, 55 Cal. 37; *Cook* v. *Berlin & Co.*, 14 N. W. Rep. 808; *Immigrant Bank* v. *Clute*, 33 Hun. 82; *Cole v. Malcolm*, 66 N. Y. 365; *Twamley* v. *Cassidy*, 82 N. Y. 155.

*Carmody & Leslie*, for respondents.

By statute an execution can issue after the death of a judgment creditor upon his judgment, § 5110 Comp. Laws. Hurley the receiver was not a necessary party. But if a necessary party the point of his non joinder should have been made by demurrer. Not having been so made it is waived. Sections 4909–4912–4913 Comp. Laws. *Hoard* v. *Clum*, 17 N. W. Rep. 275; *Christian* v. *Bowman*, 51 N. W. Rep. 663; *Beeler* v. *First National Bank*, 51 N. W. Rep. 857; *Cohn* v. *Lipson*, 58 N. W. Rep. 280. Where deeds are void because of actual fraud, they are not allowed to stand as security to the grantee for advances made or responsibility incurred on account of them. *Sand* v. *Codwise*, 4 Johns 534; *Jackson* v. *Ludelig*, 99 U. S. 513.

· BARTHOLOMEW, J. The plaintiffs in this case are the Daisy Roller Mills, a corporation; the McCormick Harvester Machine Company, a corporation; J. W. Griggs and E. W. Dyke, co-partners under the firm name of J. W. Griggs & Co.; Helen E. Thompson, as executrix of the estate of Milton H. Thompson, deceased; Cornelia M. Arnold, as administratrix of the estate of Reuben Cole, deceased; Lizzie J. Anderson; and Mabel H. Frances and Harry M. Frances, by Lizzie J. Anderson, their guardian. The defendants are George A. Ward and Jessie S. Ward, husband and wife; H. H. Hall, a son of Jessie S. Ward by a former marriage; Daniel Patterson; and Benjamin Cameron. On December 20, 1888, George A. Ward and Jessie S. Ward, by warranty deed, conveyed to Daniel Patterson about 1,000 acres of land in Traill County. On the same day H. H. Hall conveyed to Patterson, by warranty deed, 320 acres of land in said county. The plaintiffs are, each and all, judgment creditors of the Wards and Hall. The debts upon which their respective judgments are based existed prior to the date of such conveyances, but the judgments have been obtained since that date. The plaintiffs claim that executions were regularly issued upon their respective judgments, and levied upon the real estate described in said conveyances, as the property of the Wards and Hall, and that further proceedings under such executions are held in abeyance

until the powers of a court of equity can be invoked to brush aside such conveyances, which are alleged to be fraudulent and void as against the creditors of the Wards and Hall. As we understand the records, the Wards and Hall make no defense. Patterson and Cameron defended, and the decision of the trial court being against them, they bring the case to this court for trial *de novo*, upon a statement of the case embodying all the testimony offered, and all the proceedings had, in the lower court. These same conveyances were before us in the case of *Paulson* v. *Ward*, 4 N. D. 100, 58 N. W. Rep. 792. In that case, Paulson & Co., judgment creditors of the Wards and Hall, attacked said conveyances as fraudulent and void as to them, and this court affirmed a decree of the District Court so declaring. After such affirmance, Patterson purchased the Paulson judgments at their full face value, and had them assigned to Cameron, in trust for Patterson. It is for this reason that Cameron appears as a defendant herein. He is not otherwise interested in the transaction.

In 1894, in some litigation between the Wards and Hall, on the one part, and Patterson, on the other, a receiver was appointed for the rents and profits of the lands described in the conveyances here in controversy. Defendant Patterson, in his answer herein, and in open court, asked that such receiver be brought in as a party defendant in this case. This the trial court refused, and the point is urged here. But we are unable to see in what manner such receiver is a necessary or even proper party to this litigation. No accounting for rents and profits is asked as against Patterson for any time since such conveyances were made. The sole question here is the validity or invalidity of those conveyances of December 20, 1888, made nearly six years before the receiver was appointed, and with which he was in no manner connected. He is clearly not a necessary party at this stage of the litigation.

The answer of defendant Patterson attempted to raise an issue as to the representative capacity of the plaintiffs, Helen E. Thompson, as executrix, Cornelia M. Arnold, as administratrix,

and Lizzie J. Anderson, as guardian. The records and proceedings of the county court were introduced to show their appointment and qualification respectively. It is urged here that this evidence is insufficient. We are not pointed to the particulars wherein it is defective, nor have we been able to discover them. Moreover, this much is certain: The parties were appointed by the proper court. They qualified, and entered upon the discharge of their respective duties. Under these circumstances, the legality of their appointment cannot be collaterally attacked. *Succession of Dougart*, 30 La. Ann. 268; *Menage* v. *Jones*, 40 Minn. 254, 41 N. W. Rep. 972; *White* v. *Weatherbee*, 126 Mass. 450.

Another preliminary question is raised as against the claims represented by Helen E. Thomson, executrix, and Cornelia M. Arnold, admistratrix. The judgments in these cases were procured in the lifetime of the decedents, and in their names, and the executions in aid of which this action was brought, and which were issued after the decease of the original judgment creditors, were issued in their names, no proceedings having been had, by *scire facias* or otherwise, to revive the judgments in favor of the representatives.

It is urged that an execution issued in favor of a judgment plaintiff then deceased is void; that the death of a judgment creditor suspends the right to issue execution until, by proper proceedings, the judgment is revived in favor of his representatives. No doubt that such was the case at common law. See Freem. Ex'ns, § § 35, 36, where the matter is fully discussed, and authorities cited. But § 5110, Comp. Laws, in force when this action was begun, reads as follows: "The party in whose favor judgment has heretofore been, or shall hereafter be given, and, in case of his death, his personal representatives, duly appointed, may, at any time within five years after the entry of judgment, proceed to enforce the same by writ of execution, as provided in this chapter." No provisions are contained in the chapter for reviving the judgment or substituting parties. Under

statutes similar to this, it has frequently been held that no revivor or substitution was necessary. 4 Wait, Prac. 7. In some cases the statute requires the name of the party in whose interest the writ issues to be indorsed on the execution. *Duryee* v. *Botsford*, 24 Hun. 317; *Meek* v. *Bunker*, 33 Iowa, 169. In other cases the writ is permitted to issue in the name of the representative. *Gaston* v. *White*, 46 Mo. 486. This is matter of detail. Our statutes are silent on the point. They simply declare that personal representatives of the deceased, duly appointed, may proceed to enforce the judgment by execution. We think it was the legislative purpose to permit the writ to issue in the name of the original parties to the judgment in cases of this character.

We need not in this case discuss the detail testimony upon which fraud is predicated. All the testimony introduced in the case of *Paulson* v. *Ward, supra,* was introduced in this case. In the former case we discussed the testimony at length, and announced what facts we deemed proven. We need not recapitulate them. From the proven facts in that case, we concluded that the transfers attacked were made by the grantors with intent to hinder, delay, and defraud the plaintiff, and that Patterson, knowing of such intent upon the part of the grantor, actively and purposely aided in its consummation. We need only notice here the points wherein it is claimed the evidence in this case differs from the evidence in the Paulson case. In that case it appeared, as it does in this, that the conveyances were in fact intended as mortgages, and were accompanied by a defeasance, which was not recorded. We commented upon the fact that deeds absolute on their face were taken as security, and no explanation given why the transaction assumed that form. We stated that such fact was a circumstance which might be considered, with the other evidence in the case, as tending to establish fraud. It is claimed that the transaction is explained in this case. The defendant Patterson swears that he took deeds absolute, because he supposed that in case of default it would save foreclosure, and avoid the year given for redemption. This explanation is not very

satisfactory to a chancellor, but, granting its insufficiency, it only removes one of the circumstances in the case indicative of fraud. We think there is sufficient left to warrant the finding of actual fraud.

It is urged, also, that in the former case the evidence showed that Patterson or his agent, Hanson, had actual knowledge of the existence of the Paulson claims at the time the deeds were taken, while in this case it appears that neither Patterson or his agent, Hanson, had at that time any knowledge of the claims of any of the plaintiffs in this case. We cannot concede the latter proposition under the evidence, but, granting it, we are unable to see how it aids appellants. Section 5052, Rev. Codes ( § 4656, Comp. Laws), declares that "every transfer of property or charge thereon made * * * with intent to delay or defraud any creditor or other person of his demands is void as against all creditors of the debtor," etc. Without attempting a full construction of this section, we think this much is clear: If a creditor seeking to set aside a conveyance as fraudulent as against himself shows that the conveyance was made and received for the express purpose of defrauding another creditor, he thereby establishes its fraudulent character as against himself. As we have said, all the evidence in the Paulson Case was introduced as a part of the evidence in this case. If that evidence shows a fraudulent conveyance as to Paulson, the law then declares it fraudulent as to these plaintiffs.

There are, however, certain interesting legal propositions presented in this case that were not in the Paulson Case. At the time of the transfer of the lands to Patterson, and as a part of the transaction, Patterson assumed, by parol, and promised to pay, pre-existing liens and encumbrances against the land, amounting to about $15,000. Upon these claims, Patterson has paid, in principal and interest, large sums of money, and he also paid the taxes for one year. Since all these claims so paid were prior and superior to the claims of any and all of these plaintiffs, and since, if not paid by Patterson, plaintiffs would have been forced to

pay them before they could realize anything upon their own claims, out of the transferred property, it is urged that these payments by Patterson worked no wrong upon or injury to plaintiffs, and that Patterson should be subrogated to the rights of the parties whose claims he has paid, and that his conveyance should be held good as a mortgage to that extent at least, and that if a decree be entered for the sale of the lands, as was done by the trial court, such decree should provide that the amounts so paid by Patterson in extinguishment of superior liens be first repaid to him from the proceeds of such sale. Viewed from the standpoint of plaintiffs' rights alone, there is great, almost irresistible, plausibility in this contention. To require that the amount of the liens subsequently paid by Patterson be first repaid to him from the proceeds of the property would leave plaintiffs in exactly the same position as to those claims that they would have held had the fraudulent transfer never been made. It is clear that plaintiffs have no persuasive equities to oppose this contention of the defendant Patterson. But there are other principles of law almost universally recognized by the courts, which must be considered in any adjudication upon the rights of the defendant.

It must be borne in mind that this is a case of actual fraud, a case where the grantee Patterson actively aided the grantors, the Wards and Hall, in their design to hinder and delay their creditors. Hence the rules that apply in cases of constructive fraud are not applicable to this case. Where the fraud is constructive only, the grantee comes into court with comparatively clean hands, and the courts treat him with leniency. In such cases the fraudulent conveyance has been allowed to stand as security for the purchase price, or for the amount of prior liens or debts of the grantor paid by the grantee, or for taxes paid. *Coiron* v. *Millaudon*, 19 How. 115; *Clements* v. *Moore*, 6 Wall. 312; *Bean* v. *Smith*, 2 Mason, 252, Fed. Cas. No. 1174, also reported 18 Myers' Fed. Dec. bottom page 406; *Tompkins* v. *Sporut*, 55 Cal. 31; *Robinson* v. *Stewart*, 10 N. Y. 189; *Lobstein* v. *Lehn*, 120 Ill.

549, 12 N. E. Rep. 68. This is a case in which a court of equity is asked simply to set aside an alleged fraudulent conveyance. It is brought in aid of executions. If the conveyance be set aside, then the executions from the law courts can reach and appropriate the property. No other relief is asked. The defendant Patterson, the grantee in the conveyances, is not asked to account for the rents and profits accruing since the conveyance to him; nor is he asked to account for the value of the property received. No money judgment is asked. Cases may be found, and they are doubtless well and equitably ruled, where a fraudulent grantee, when called upon to account for rents and profits, or for the value of the property received, has been allowed to reduce the recovery by the amount of liens against the property that he has paid and discharged. *Loos* v. *Wilkinson,* 113 N. Y. 485, 21 N. E. Rep. 392, was a case of actual fraud, and the fraudulent conveyance had been set aside in the same case (see 110 N. Y. 195, 18 N. E. Rep. 99;) and the subsequent proceedings were had to compel the grantee to account for rents and profits, and in such accounting he was allowed credits for repairs and taxes and interest on mortgages on the property which he had paid. The court said: "When the creditors of the grantor come into a court of equity, seeking to compel him (the grantee) to account for rents and profits, the accounting must be on equitable principles; and when he has been compelled to surrender the property conveyed to him, and to account for all the profits he has made, or could have made, or ought to have made therefrom, the ends of justice have been completely attained." This case clearly recognizes the fact that the rule there applied does not obtain in cases where nothing is asked but the concellation of a fraudulent conveyance. We think the case of *Bank* v. *Halsted,* 56 Hun. 530, 9 N. Y. Supp. 852, presents no different principle. In that case, an insolvent father, on the eve of making an assignment, transferred to his son, without any consideration, certain corporate stock, which had previously been hypothecated by the father for a loan of money. Subsequently, the son sold the

stock, paid the amount for which it had been hypothecated, and had a balance in his hands. The creditors of the father sought to make the son account for the full value of the stock, but the court allowed him a credit of the amount paid to release the stock. This was a case when an accounting was asked, and a money judgment. Appellant Patterson relies much upon these cases, but this action is so different in its nature from these cases from New York that it is evident that the ruling in those cases cannot aid appellant. The evidence in this case shows that the gross value of the crops raised upon the land has been about $12,000 per year. If Patterson were required to account to the creditors of the grantors for this sum, he might then confidently rely upon the above cases.

It is not the true province of a court of equity to punish a party for fraud. That is left to the courts of law. Neither will it despoil him of his property. But when it becomes necessary for a party to invoke the equity powers of the court to obtain relief from a position in which he has voluntarily placed himself, —when it becomes necessary for him to assume the position of actor, and appeal to equity for affirmative relief,—then he must come with clean hands. This principle is as old as equity juris- diction, and knows no exceptions. The very term "equity" bars whatever savors of fraud or wrong. He who appeals to equity for relief from a position in which his own fraud has placed him must ever fail. Equity will leave him where it finds him, irre- spective of the financial results to himself. "He that committeth iniquity shall not have equity." In the early and instructive case of *Sands* v. *Codwise*, 4 Johns., at page 598, Chief Justice Kent, in speaking of a claim made by fraudulent grantees that the con- veyance be allowed to stand as security for their advances, said: "The denial of this prayer appears to me to result necessarily from a decision against the validity of the deeds. On the ground of absolute fraud, the deeds were void to all intents and pur- poses. It is the same thing as if no deeds had ever been executed. A fraudulent conveyance is no conveyance, as against

the interests intended to be defrauded. This is the plain language and intelligent sense of the rule of the common law. Rob. Fraud. Conv. 591, 596, 597; *Humberton* v. *Howgil*, Hob. 72b; Dyer, 194, 294, 295a. pl. 16; 3 Coke, 78b. It is impossible that those deeds can be permitted to stand as a security if they are to be adjudged void *ab initio*. If they have no lawful existence, it would be inconsistent and absurd to recognize them for any lawful purpose. I presume there is no instance to be met with of any reimbursement or indemnity afforded by a court of chancery to a *particeps criminis* in a case of positive fraud." In the case already cited from 2 Mason, and Fed. Cas. No. 1174, Judge Story said: "I agree to the doctrine laid down by Mr. Chancellor Kent in *Boyd v. Dunlap*, 1 Johns. Ch. 478, and *Sands* v. *Codwise*, 4 Johns. 536, 549, that a deed fraudulent in fact is absolutely void, and is not permitted to stand as a security for any purpose of reimbursement or indemnity; but it is otherwise with a deed obtained under suspicious or inequitable circumstances, or which is only constructively fraudulent." And also: "In the present case it appears to me that the court is bound by the strict rule. The conveyances were in their very concoction fraudulent. They were, therefore, in the language of the statute, 'utterly void,' as against creditors, and cannot be permitted to stand as a security for any advances subsequently made, or any pretended debts then due. All the reasons of public policy, so forcibly urged in *Sands* v. *Codwise*, 4 Johns. 598, as against such an allowance, command the court to be rigid in denying to those who are guilty of bad faith any such indulgence. Let them reap the due reward of their own misconduct." In *Railroad Company* v. *Soutter*, 13 Wall. 517, a case wherein the railroad company, a fraudulent grantee, was seeking to recover the amount paid by it upon an outstanding mortgage upon the property while in possession, Mr. Justice Bradley, speaking for the court, said: "Who are the complainants? Are they not the very bondholders, self-incorporated into a body politic, who, through their trustee and agent, effected the sale which was declared fraudulent and void, as

against creditors, and made the purchase which has been set aside for that cause? Was it ever known that a fraudulent purchaser of property, when deprived of its possession, could recover for his repairs or improvements, or for incumbrances lifted by him while in possession? If such a case can be found in the books, we have not been referred to it. Whatever a man does to benefit an estate, under such circumstances, he does in his own wrong. He cannot get relief by coming to a court of equity." The same principles are unequivocally announced in the following cases: *Thompson* v. *Bickford*, 19 Minn. 17 (Gil. 1;) *Wood* v. *Hunt*, 38 Barb. 302; *Davis* v. *Leopold*, 87 N. Y. 620; *Allen* v. *Berry*, 50 Mo. 90; *Chapman* v. *Ransom*, 44 Iowa, 377; *Beidler* v. *Crane*, 136 Ill. 92, 25 N. E. Rep. 655; *Ferguson* v. *Hillman*, 55 Wis. 181, 12 N. W. Rep. 389; *Sale* v. *McLean*, 29 Ark. 612. See, also, Bump, Fraud. Conv. (4th Ed.) § 628.

We think these principles must be applied in this case in their full vigor. When the deeds from the Wards and Hall to Patterson were executed, there existed valid liens and incumbrances upon the property conveyed. It was not possible to defraud these secured creditors. Their rights in the property were clearly fixed. But the successful consummation of the scheme to defraud the unsecured creditors, and at the same time secure to the grantors the continual use of the land, and the benefit of the crops raised thereon, required that provision be made whereby the securities would not in the meantime be enforced against the land. Therefore Patterson assumed these incumbrances, and, in addition to deeds absolute of the land, took from the grantors a chattel mortgage for more than $49,000, covering all the personal property then owned by them, and all the crops to be raised by them during a long series of years. The taking of this chattel mortgage and its bearing upon the real estate transaction are fully discussed in *Paulson* v. *Ward*, *supra*. In pursuance of this agreement, Patterson has paid a portion of these secured claims, but all the payments so made by him were in aid of the original corrupt purpose of defrauding these plain-

tiffs. They constitute a part and parcel of the original fraudulent scheme, and are inseparable therefrom. Therefore, when Patterson appeals to a court of equity to be indemnified for such payments, the relief cannot be granted without a violation of plain principles of equity jurisprudence. These principles must apply to the taxes also. Both parties knew that taxation was inevitable, and that the taxes must be paid in order to consummate their purposes. It appears that Patterson paid the taxes or a portion of them for one year. But this must be regarded as a voluntary payment by him, in aid of the original fraud.

There is yet another claim made by appellant Patterson, wherein we think he must prevail. As has been stated, since the final determination in the case of *Paulson* v. *Ward, supra,* Patterson has purchased and caused to be assigned to him, or to appellant Cameron in trust for him, the judgments involved in that case. Such purchase was not made in pursuance of the original agreement. In one sense it was not voluntary. It was forced upon Patterson by the decree in the Paulson case. It was not connected with the original fraud. By the purchase, Patterson succeeds to the rights of Paulson also, and no rule of equity prevents the enforcement of these rights. We need not decide in this case whether, in cases of conveyance of real property in fraud of the creditors of the grantor, judgments subsequently obtained against the grantor become liens upon the property conveyed in the order of their rendition, or in the order in which the judgment creditors attack the conveyance. In either case the liens of the Paulson judgments are senior to the liens of any of the plaintiffs in this case. The decree below, so far as it set aside the deeds as fraudulent and void as against these plaintiffs, and allowed appellant Patterson no relief or indemnity, as against plaintiffs, for the payment of the claims which he assumed to pay under his oral contract made at the time of the conveyance to him, and for the payment of the taxes, was in all respects right and proper. But the decree should have declared the lien of the Paulson judgment in the hands of Cameron, as trustee for Patterson, upon

the lands described in such conveyances, to be senior and superior to the liens of the judgments of these plaintiffs. The District Court of Traill County will enter a modified decree in conformity with these views.

· Modified and affirmed.   All concur.