## CONSPIRACY TO DEFRAUD AN ABANDONED WIFE.

Court of Appeals for Carroll County.

SAMUEL T. IDDINGS AND ALBAN H. ELLIOTT v. ANNA
M. WHITACRE.

Decided, December 16, 1913.

*Abandoned Wife—Rights of, as a Creditor of Her Husband—Attach
Before the Entering of Judgment for Alimony—Property Fraudu-
lently Transferred in Effort to Defeat Her Claim—Conspirators
Compelled to Respond in Damages.*

1. Where I and E conspire with a husband to defraud his wife of her
   right of alimony and dower in the husband's property, and in
   pursuance thereof, I, who holds the legal title to the real estate
   of the husband, in trust, conveyed it to E and he mortgages the
   real estate for. its value to an innocent mortgagee, and gives the
   husband the proceeds of the mortgage debt to aid him in con-
   verting his property into money and leave the state, I and E
   are liable in damages to the wife for the amount of her judg-
   ment for alimony and the present worth of her dower interest,
   not in excess of the reasonable value of the real estate so trans-
   ferred.
2. That the wife has not obtained her judgment for alimony at the
   time of the fraudulent conveyances of the real estate will not
   defeat the action.

*McDonald & Oglevee,* for plaintiffs in error.
*H. E. Eckley,* contra.

POLLOCK, J.; METCALFE, J., and NORRIS, J., concur.

The defendant in error brought an action in the court of com-
mon pleas of this county against the plaintiffs in error herein,
Rachel Iddings and Olive A. Elliott, to recover a judgment for
damages, on the grounds that the defendants below entered into
a conspiracy with her husband, Harvey B. Whitacre, to cheat
and defraud her by converting all his property into money, in
order to enable Whitacre to take his money beyond the jurisdic-
tion of the court, and prevent her from recovering alimony and
depriving her of her right of dower in her husband's real estate,

Issue was joined by separate answer of the defendants, a jury was waived and the case went to trial to the court, resulting in a judgment in favor of the plaintiff below against Samuel T. Iddings and Alban H. Elliott, and in favor of Rachel Iddings and Olive A. Elliott. This action is prosecuted to reverse that judgment, on the ground that it is against the weight of the evidence and the law.

The facts in this case, gathered from the testimony introduced below, show that Harvey B. Whitacre, then unmarried, on the 2d day of July, 1906, transferred by general warranty deed to Samuel T. Iddings the real estate described in the petition. That this conveyance was made to avoid the results that might ensue from a threatened action for slander; that at the time the deed was made Iddings executed an agreement, by which he agreed to convey back the real estate upon demand to Whitacre, or his assigns. That at the time of this transaction there was no contemplated contract of marriage existing between the plaintiff below and Harvey B. Whitacre, but that afterwards on November 17, 1908, they were married. This marriage did not prove agreeable, and by March, 1909, the said Whitacre had determined to abandon his wife, and for the purpose of preventing her from subjecting his property to her support or payment of alimony or dower, he determined to convert his property into money, and this purpose was known at that time to the said Samuel T. Iddings. Iddings arranged a meeting between Whitacre, Elliott and himself; at that meeting Whitacre made known his purpose of converting all of his property into money, for the purpose of placing it beyond the reach of his wife, and he solicited Elliott to purchase his farm and take the deed from Iddings direct to himself. Either at this or a subsequent meeting, Whitacre, Iddings and Elliott entered into an arrangement by which Iddings and his wife should transfer by warranty deed the real estate owned by Whitacre to Elliott; that Elliott was to mortgage it for two thousand dollars and pay the money to Whitacre, which was afterwards done. This was done with the intention and purpose of placing the property of Whitacre beyond the reach of his wife, and depriving her of her marital rights in the property of her husband.

The notes and securities owned by Whitacre had some time prior to the making of the deed for the real estate been transferred to Iddings to hold for Whitacre. About the time of these negotiations for the transfer of the real estate these notes and securities were returned to Whitacre for the purpose of converting them into money, the intention of Whitacre to convert the same into money being known to Iddings and Elliott at the time of the transfer of the real estate.

On May 1st, 1909, the plaintiff below commenced her action against her husband, Whitacre, and the defendants below in this action and Bower, the mortgagee of Elliott, to obtain a judgment against her husband for alimony, and to set aside these several conveyances of her husband's property, on the ground that they were made to defraud her. At the bringing of that action she caused an injunction to issue enjoining the collection of the notes and securities, and enjoining the transfer of the real estate. This action went to trial, resulting in a judgment for alimony in the sum of one thousand dollars, and costs, and a decree setting aside the several conveyances, except the mortgage to Bower, which was held valid. She caused an execution to issue and for want of goods and chattels on which to levy, the same was levied upon the real estate described in the petition; she then caused contempt proceedings to be begun against her husband for failure to pay the alimony judgment, but the writ was returned without service having been made upon him, for the reason that he could not be found by the officer attempting to execute the writ.

Proceedings were then had to sell the real estate and apply the proceeds to the payment of the mortgage lien and the judgment for alimony, which resulted in the sale of the property for the sum of twenty-three hundred and twenty dollars, which was about the full value of the property, and less than sufficient to pay the costs, taxes and the mortgage, leaving the judgment for alimony wholly unpaid and unsatisfied.

On the next day after the hearing of the testimony in the alimony proceeding, and before the judgment was announced by the court, Harvey B. Whitacre left the state of Ohio, taking with

him in money something over three thousand dollars, being all of his property.

The defendant, Samuel T. Iddings, is the husband of Rachel Iddings, who is a sister of Harvey B. Whitacre; the defendant Olive A. Elliott, is the daughter of Whitacre, by former marriage, and the wife of Alban E. Elliott.

A husband, both by common law and the statutes of this state, is required to support his wife. By the statute of this state the husband must support himself, his wife and his minor children, out of his property or by his labor. (General Code, Section 7997.)

Thus, the property of the husband is subject to the support of his wife, except where the rights of *bona fide* creditors intervene, and she can not lawfully be deprived of this interest in her husband's property; she is a creditor of her husband to this extent. The husband owes to his wife the utmost good faith, and it is a fraud upon her for her husband and others to convert his property into money with the intention of depriving her of her right of support and dower in his property. This principle is recognized by our Supreme Court, where the contract of marriage existed (*Ward* v. *Ward,* 63 Ohio St., 125). If such is the case where the contract only exists, much more should it be the rule where the marriage has taken place.

A judgment for alimony is only the legal means of compelling a husband, who has abandoned his wife, to support her. She is just as much a creditor and just as much entitled to the benefit of his property for her support before a judgment for alimony is entered, as she is afterwards to subject his property to the payment of alimony.

The property of a debtor conveyed in fraud of his creditors, in the hands of a fraudulent grantee, is subject to the payment of the claims of the creditors of the debtor, and where the grantee has placed the property of the debtor beyond the reach of the creditors, he is subject to a personal judgment for the value of the property. This principle is recognized by our Supreme Court in the case of *Donley* v. *Clark, Adm'r,* 55th Ohio St., 294.

In the case of *Ferguson* v. *Tillman,* 12th N. W., 389, the court went further and laid down the rule that where the fraudulent

grantee had sold the property of the debtor, he could not be protected for the money or other consideration he may have paid for the transfer of the property to him, as against the creditors of the debtor, but was liable for the full amount of the proceeds of such property. This is on the principle that the fraudulent grantee holds the property in trust for the creditors of his grantor, and as trustee must account for the full amount of the proceeds.

Iddings, the grantee of Whitacre, held the real estate of Whitacre in trust for his wife, so far as her marital rights might require the property. Elliott, when the property was conveyed to him by Iddings, took it charged with the same trust. Following the principle announced in the above case, he must account to Mrs. Whitacre for so much of the proceeds of the mortgage he placed on the property as her marital rights are reasonably worth. Iddings being a joint wrong-doer with Elliott, is jointly liable.

In the case of *Adams* v. *Page*, 7th Pickering, 541, it was held that an action for conspiracy would lie in favor of a creditor against his debtor and a third person, who by agreement with the debtor, had caused the debtor's property to be attached on a fictitious claim, and deprived the creditor of the payment of his claim on a subsequent attachment of the same property. This was placed on the ground that there was an unlawful act in causing the fictitious attachment to issue, and an injury by depriving the creditor of the property upon which he had placed an attachment.

Again in the case of *Mock* v. *Danforth*, 31st Am. Dec., 468 (6 Watts, 304), it was held that:

"Where two persons conspire with a third to defraud the latter's creditors, and in pursuance thereof, take an assignment of his property, and aid him in leaving the state, they are liable in an action upon the case to such creditor.

"That the debt of a creditor is not due at the time of the conspiracy is no objection to such action."

It is true that the rule laid down in this latter case has been criticised and not followed in many subsequent decisions. The reason given for not following this, is that the creditor had a

right to sell his property and receive the purchase money, and that the intention with which it was done could not affect the right to purchase; and further, that the creditors were only general creditors of the debtor, and had no lien or claim on the property, and the loss or injury would be too remote, contingent and uncertain to base an action for damages.

The defendants below and Whitacre conspired to deprive plaintiff of her marital right of support and dower in Whitacre's real property. When her husband had abandoned her, and she was compelled to secure.her right of support in a suit for alimony, she sought by all the legal means at her command to subject the real estate conveyed by the defendants in fraud of her ·right to the payment of her alimony.

But again, by a statute of this state a contract of sale made with intent to hinder, delay or defraud a creditor, shall be void as to the creditor of such debtor, at the suit of the creditor (General Code, Section 11104), when the person to whom such sale was made knew of such fraudulent intent on the part of such debtor prior to his purchase (General Code, Section 11105).

And further, our statute provides that whoever fraudulently makes a conveyance to defeat his creditors is guilty of an offense (General Code, Section 13126). When these plaintiffs in error were conspiring with Whitacre to fraudulently transfer his property, and converted it into money that he might leave the state, taking his money with him, they were conspiring together to do an unlawful act.

''It is the pride of the common law that whenever it recognizes or creates a private right, it gives a remedy for the wilful violation of it. * * * It is a sound principle that where the fraudulent misconduct of a party occasions injury to the private rights of another, he shall be responsible in damages for the same." *Yates* v. *Joyce,* 11 Johns, 136.

The wife has a right of support both by common law and statute from her husband out of his property or labor, and when the husband abandoned his wife the law enforced this right by granting her alimony out of her husband's property. The plaintiffs in error, knowing that her husband had abandoned the de-

fendant in error, fraudulently conspired with him to convert his property into money, to enable the husband to take all of his property out of the state, and deprive her of her marital rights in his property.

Defendant in error sought to subject the real estate of her husband to the payment of her judgment for alimony, and was prevented by the fraudulent transfers of the property made by the plaintiffs in error. By reason of their fraudulent misconduct the wife has lost her rights in her husband's property, and plaintiffs in error are responsible in damages to. her to the amount of the loss occasioned by their misconduct.

The defendant in error, Anna M. Whitacre, filed a cross-petition against Rachel Iddings and Olive A. Elliott, asking that the judgment below in favor of them be reversed. It is sufficient to say that no act of conspiracy is shown on their part. No doubt they know of the reasons for these conveyances, but they seemed to have taken no part in the transaction, except that Mrs. Iddings joined in the deed with her husband to Elliott, and Mrs. Elliott in the mortgage with her husband to Bower.

The judgment of the court below is affirmed.